UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICKYE WARD, | : |
| | : |
| Plaintiff, | :    NO. 3:04CV1217 (MRK) |
| | : |
| v. | : |
| | : |
| STATE OF CONNECTICUT | : |
| DEPARTMENT OF ADMINISTRATIVE | : |
| SERVICES, | : |
| | : |
| Defendant. | : |

**RULING AND ORDER**

In this case, Plaintiff Vickye Ward, a black female, was terminated from her employment for violating a Department of Administrative Services (DAS) policy against personal use of state computers. Ms. Ward maintains that her dismissal was motivated in part by her race, and that other employees violating the policy were treated more favorably. In particular, Ms. Ward alleges that other employees were asked to resign (which carries less of a stigma than termination), were laid off (allowing them to put their names on a call-back list for future state employment), or were merely suspended. Before the Court is Defendant DAS's Motion for Summary Judgment [doc. #29]. For the following reasons, Defendant's motion is DENIED.

Familiarity with the parties, issues, and relevant law are assumed. DAS does not deny that Ms. Ward has made out a prima facie case of discrimination. However, DAS maintains that she was terminated pursuant to a policy of which she was well aware, and that other similarly situated employees were treated comparably. A letter from DAS's Principal Personnel Officer shows that of

ten employees (other than Ms. Ward) who were disciplined under the policy: six (four white and two black) resigned, two (both white) were laid off, one (white) was suspended for sixty days, and one (white) was suspended for ten days. *See* Paintiff's Summary Judgment Exhibits [doc. #36] Ex. 7. Thus, both employees who were merely suspended were white; both who were laid off were white; and all black employees were either forced to resign or were fired.

DAS offers race-neutral explanations for two of these disciplinary actions. The Personnel letter notes that the employee receiving a ten-day suspension, Richard Omohundro, was disciplined lightly because "DAS was unable to prove use was intentional." *Id.* DAS also claims that one white employee, Patricia Gallucci, was laid off in light of her twenty-eight years of state service and her cooperation during the investigation, and because at the time DAS took disciplinary action against her, DAS was in the process of a state-mandated workforce reduction. By contrast, Ms. Ward had been employed for only fourteen years, she was uncooperative during the investigation, and her termination occurred after the layoffs had finished.

Even accepting DAS's explanations for Mr. Omohundro's ten-day suspension and Ms. Gallucci's layoff, the fact remains that other white employees were also treated relatively favorably. Jay Tulin, who also had fourteen years of state service, was suspended for sixty days. David Elwell, who had eight years of state service, accepted a layoff. DAS has not even attempted to explain why these employees receive relatively lenient penalties, or why no black employee was among those suspended or laid off. There may be perfectly valid, non-discriminatory reasons for each of these disciplinary decisions, but DAS has provided none. Therefore, viewing the evidence in the light most favorable to Ms. Ward, the Court is unable to conclude that no reasonable jury could find in Ms. Ward's favor. *See Petrosino v. Bell Atlantic*, 385 F.3d 210, 224 (2d Cir. 2004) (reversing a grant

of summary judgment because the defendant could not "demonstrate from the totality of . . . evidence that, as a matter of law, no reasonable jury could" find in plaintiff's favor).  DAS's Motion for Summary Judgment [doc. #29] is DENIED.

IT IS SO ORDERED,

/s/     Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: April 4, 2006**.